PRATT & LETCHWORTH CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4644.        Promulgated June 23, 1927.

Reasonable allowance for amortization of foundry determined.

*F. J. Maguire, Esq.*, and *E. N. Mills, Esq.*, for the petitioner.
*A. R. Marrs, Esq.*, for the respondent.

The taxes in controversy are income and profits taxes for 1920, of $92,760.96. It is alleged that taxes for 1918 and 1919 are involved.

It does not appear that any deficiency has been determined for those years. The petitioner assigns as error the refusal of the Commissioner to allow as a deduction from gross income any allowance for amortization of the cost of a certain building constructed after April 6, 1917, for the production of articles contributing to the prosecution of the war against the German government.

### FINDINGS OF FACT.

The petitioner is a corporation organized in the year 1895 under the laws of the State of New York, having its principal place of business in the City of Buffalo.

In the years 1918 and 1919 petitioner constructed a new malleable iron foundry building at a cost of $391,237.88, all of which cost was borne by the petitioner. The said building was acquired for the production of articles contributing to the prosecution of the war and was used during 1918 and to some extent during 1919 for the production of such articles.

The petitioner duly filed claims for amortization in its original income-tax returns for the years 1918 and 1920.

The said building was used after the cessation of the war in the business of the petitioner. The replacement cost of the said building as of March 1, 1921, was $297,981.64. The replacement cost of the said building as of March 1, 1922, was $301,635.09. The replacement cost of the said building as of March 1, 1923, was $302,807.24. The replacement cost of the said building as of March 1, 1924, was $305,110.70.

Depreciation was allowed as a deduction on the cost of said building at the rate of 3 per cent for 1918, 3 per cent for 1919, 2 per cent for 1920, 2 per cent for 1921, 1½ per cent for 1922 and 1½ per cent for 1923.

In the year 1918 the total net sales of the petitioner were $4,514,-202.55 and in the year 1919 they were $2,509,426.44. For the year 1918 the gross income was $687,427.57 and for the year 1919, $337,321.71. For the year 1918 petitioner's taxable net income without deduction for amortization was $126,915.92 and for the year 1919 there was a net loss amounting to $115,886.19 after adjustments for exempt income. The taxable income of the petitioner for 1920, without deduction for amortization or for any net loss in 1919 was $645,155.11.

In computing the deficiency no amortization on said foundry building was allowed by the Commissioner. A reasonable allowance for amortization of such building in 1918 was $90,000.

### OPINION.

PHILLIPS: While it appears that 1920 is the only year for which a deficiency has been determined, a net loss was sustained in 1919,

before the allowance of any deduction for amortization, and it becomes necessary to determine the 1918 income and the correct amount of the 1919 net loss before we may determine how much, if any, of such net loss may be deducted in 1920.

In the deficiency letter it was admitted by the Commissioner that the foundry building was constructed and used in the production of articles contributing to the prosecution of the war. In the respondent's answer this is denied. The proof, however, shows that the petitioner was engaged in 1918 and to some extent in 1919 as a subcontractor in the production of castings for railroad locomotives for the United States Government for use in France and of castings for automobiles and trucks. In order to do this work, it secured the consent of the British Government to discontinue the production of steel billets, which it had theretofore undertaken, such billets being used in the manufacture of shells. It was granted priority classification by the War Industries Board and was under constant pressure to complete this work. There can be no question that this building was constructed and used for the production of articles contributing to the prosecution of the war.

In the deficiency letter from which the appeal was taken, the Commissioner had conceded that the building was acquired for the purpose of producing articles contributing to the prosecution of the war, but no deduction for amortization was allowed for the reason stated in the letter that "it has been decided that the action of the Unit based on the engineer's report that the building could not be replaced at postwar costs for less than the actual cost of construction in 1918, should be sustained." This position taken by the Commissioner was in accordance with his regulations which provide that when such property is not sold·or discarded the amount of the amortization allowance shall be the difference between the cost of the facilities (with adjustments for depreciation, losses, etc.) and "the estimated value to the taxpayer in terms of its actual use or employment in his going business, *such value to be not less* than the sale or salvage value of the property and *not greater than the estimated cost of replacement under normal postwar* conditions less depreciation and depletion." Article 184, Regulations 62. Without holding that under all circumstances the postwar replacement cost represents the maximum value to a taxpayer of property which has a present existence and is therefore capable of use for immediate production, this may be a fair measure of the maximum value in many cases. Where, as in the present appeal, the parties have framed and tried the issues upon that basis, and there is nothing to indicate that the property had a value in excess of its replacement cost, we see no sufficient reason for departing from the measure of value which the parties have adopted.

Evidence of the replacement cost was given by testimony of those who had constructed the building. Complete records had been kept by them of the various kinds and amounts of material and labor entering into the construction. They had done similar construction in the same vicinity in the postwar years and were thoroughly familiar with prices and labor conditions. We are satisfied that the replacement costs fixed by them, after adding fees of supervision, etc., are as accurate as may be obtained.

It appears that the building cost $391,237.88 and that replacement cost varied from $297,981.64 in March, 1921, to $305,110.70 in 1924. We conclude that a reasonable allowance for amortization was $90,000.

It is the contention of the petitioner that any allowance should be distributed between 1918 and 1919. Since the amount allowed is less than the income in 1918, and a loss was sustained in 1919 which must first be applied against 1918 income, the question presented appears to become unimportant in this proceeding. The record indicates that most of the work on articles contributing to the prosecution of the war was done in 1918 and we are without any definite information as to the amount of such work done in 1919. We have therefore concluded that if the matter of allocation of the deduction is necessary, it should be allowed for 1918. As the petitioner had net income in 1918 and none in 1919, before any deduction for amortization, this allocation is in accord with the Board's decision in *Appeal of G. M. Standifer Construction Corporation*, 4 B. T. A. 525.

In recomputing the deficiency, depreciation of the foundry buildings for 1919 and 1920 should be adjusted by reducing the basis for the computation by the amount allowed for amortization.

*Decision will be entered on 15 days' notice, under Rule 50.*